UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CENTRAL COMMUNITY CHURCH OF GOD, on behalf of itself and others similarly situated, and JEFF MARWIL, RECEIVER of the CHURCH EXTENSION OF THE CHURCH OF GOD, INC. and UNITED MANAGEMENT SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ENT & IMLER CPA GROUP, PC, <br><br> Defendant. | CASE NO. 1:03-cv-0678-DFH-VSS |

ENTRY ON MOTION FOR APPOINTMENT AS LEAD PLAINTIFF
AND MOTION FOR CLASS CERTIFICATION

This case follows in the wake of a Securities & Exchange Commission civil enforcement action against Church Extension of the Church of God, Inc. ("CEG"). CEG is the financing arm of the Church of God, which is headquartered in Anderson, Indiana. For more than 75 years, CEG raised money from church members and lent money to local congregations, primarily to build or expand church buildings. In the civil enforcement action filed in 2002, the SEC alleged that CEG was insolvent and had raised millions of dollars unlawfully by making false statements to prospective purchasers of investment notes. CEG consented to a permanent injunction. Under court supervision, CEG has undertaken an

effort to liquidate its assets to pay holders of those investment notes as much as possible.[1]

This civil action against CEG's former auditing firm, defendant Ent & Imler CPA Group, PC ("E&I") was filed originally by Jeff Marwil, whom the court had appointed as conservator and receiver for CEG. The court granted E&I's motion to dismiss Marwil's claims on behalf of note holders for lack of standing, but left the door open for note holders to file claims in their own right. That has now happened. In the Amended Complaint, plaintiff Central Community Church of God ("CCC") has joined as a plaintiff. CCC seeks, on behalf of itself and others similarly situated, to recover for securities fraud from E&I.

CCC seeks relief under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated under the Act, 17 C.F.R. § 240.10b-5. CCC alleges that E&I violated these federal securities laws when it certified financial statements and helped to prepare Offering Circulars containing fraudulent misrepresentations that misled note holders and purchasers about the true financial condition of CEG.[2]

---

[1] A review of this court's Entry on Motion to Dismiss (Docket No. 59) provides a more detailed history of the related cases. See *Marwil v. Ent & Imler CPA Group, PC*, 2004 WL 2750255 (S.D. Ind. Nov. 24, 2004).

[2] Count II of the Amended Complaint contains separate breach of contract allegations brought by the receiver for CEG and by one of CEG's subsidiaries. Count II is not the subject of either motion being considered in this entry.

Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3), CCC seeks court appointment as lead plaintiff.  Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, CCC also seeks certification of a plaintiff class for its claims against E&I.  CCC seeks to represent a class of all persons who purchased the subject investment notes from CEG between April 30, 1998 and April 30, 2002, and who suffered losses as a result of the investment.  E&I opposes both motions.

I.   *Appointment of Lead Plaintiff*

The PSLRA established a number of detailed procedural and substantive requirements on private federal securities litigation.  When a plaintiff files a putative class action for securities fraud, the PSLRA requires that plaintiff to publish notice that the action has been filed.  If other potential plaintiffs (and their attorneys) wish to assert similar claims and seek to take the lead role, the notice specifies a time for asserting those claims.  The court may then consolidate the different cases and select one or more lead plaintiffs and their counsel to pursue the class action.  15 U.S.C. § 78u-4(a).  The notice provision states:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3(A).  The PSLRA then establishes detailed standards for selection of the lead plaintiff and counsel from among competing volunteers.

The PSLRA establishes a rebuttable presumption for the selection of a lead plaintiff.  It states:

> (iii) Rebuttable presumption
> (I) In general
>   Subject to subclause (II), for purposes of clause (I), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>   (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(I);
>   (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>   (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
> (II) Rebuttal evidence
>   The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff –
>   (aa) will not fairly and adequately protect the interests of the class; or
>   (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

These provisions of the PSLRA were designed to prevent races to the courthouse by removing any presumption in favor of the first plaintiff (and law firm) to file a securities fraud claim.  These provisions were also designed and to

avoid situations in which a named class representative has a minimal financial stake in the case and acts primarily as a tool of the lawyers who may well have recruited him. The PSLRA was enacted with the explicit hope that institutional investors, who tend to have the largest financial stakes in securities litigation, would step forward to represent the class and exercise effective management and supervision of the class lawyers.  See House Conf. Rep. No. 104-67 at 34-35, reprinted in 1995 U.S.C.C.A.N. 679, 733-34; see also Sen. Rep. No. 104-98 at 10-11, reprinted in 1995 U.S.C.C.A.N. 679, 689-90, citing Weiss and Beckerman, *Let the Money Do the Monitoring:  How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 Yale L.J.2053 (1995).

In this case, CCC did not publish the required notice within twenty days after filing the Amended Complaint in which CCC joined the case as a plaintiff. CCC published a notice within twenty days after this court's ruling denying E&I's motion to dismiss the amended complaint.  That notice initially misstated the cause number for this case.  CCC corrected that mistake nine days later by publishing an identical notice with an accurate cause number.  CCC asserts that it also meets the criteria necessary to be presumed the "most adequate plaintiff." No other potential plaintiff has appeared to seek appointment as lead plaintiff.

E&I argues that CCC should not be designated lead plaintiff for two reasons: its failure to comply with the deadline for the notice and a potential conflict of

interest on the part of one law firm representing CCC. Neither argument is persuasive.

There is no doubt that CCC published the notice later than the statute requires. The question here is what the consequence should be. E&I contends the proper remedy is to bar CCC from serving as lead plaintiff, even though no other candidate has stepped forward. E&I quotes a district court opinion stating that the purpose of the early notice provision is "to provide class members with sufficient information about the suit and inform class members of their right to move to be appointed lead plaintiff so they can make an informed and reasoned judgment about whether they should seek lead plaintiff status." *California Public Employees' Retirement System v. Chubb Corp.*, 127 F. Supp.2d 572, 576 (D.N.J. 2001). E&I adds nothing more to its argument. It simply points out that the notice was published almost a year after CCC filed the Amended Complaint, and that the corrected notice did not extend the sixty day period for filing a request to be deemed lead plaintiff, so as to take into account the additional nine days that had expired since the first notice was published. E&I offers no argument or evidence that the notice was substantively defective or that potential class members have somehow not received sufficient notice of the nature of the claims being pursued or their opportunity to serve as lead plaintiff.

The court assumes that such a failure to comply with the time limits for publishing notice could affect a choice among competing applicants as lead

plaintiffs. In this case, however, there are no competing applicants. The court also sees no substantial prejudice to potential class members. Potential class members who read the late notice or followed the litigation as a result of local publicity have not sought to take on the responsibility of serving as lead plaintiff. This is not a case where other investors and attorneys are lining up to carry the burden and to seek the potential rewards of class representation.

E&I's proposed remedy – barring CCC from representing the potential class – is not required by the statute and in fact would run directly contrary to the purpose of the notice and lead plaintiff provisions of the PSLRA. Those provisions are intended to protect the interests of a plaintiff class of investors by inviting competition to ensure that the best available class representative takes the lead. E&I's proposed remedy would effectively stymie the class action entirely. While that would serve E&I's interests, that is not the goal of the notice and lead plaintiff provisions. Accordingly, in the absence of other applicants for the lead plaintiff role, and in the absence of a showing of substantial harm to other investors' interests, CCC's late publication of the notice does not disqualify it from serving as lead plaintiff.[3]

---

[3] The notice and lead plaintiff provisions of the PSLRA were designed for sorting out leadership of class actions in the more typical situation, in which the securities in question trade in sophisticated and efficient secondary markets, such as national stock exchanges, and several investors and sophisticated plaintiffs' law firms compete to represent a plaintiff class. This case presents a different scenario. CEG sold its investment notes primarily to church members, and there does not appear to be an established secondary market. And as noted, there is no competition for the role as lead plaintiff.

E&I aims its second attack at CCC's counsel. E&I argues that CCC has failed to establish that it is sufficiently sophisticated and informed to manage the litigation and that its counsel will be the true driving force behind the litigation. E&I also contends that one of the law firms representing CCC is also representing Marwil as receiver and therefore is subject to a significant potential conflict of interest.

The law firms of Rubin & Levin and Sommer & Barnard have teamed to request that they be appointed lead counsel for purposes of the class action. Rubin & Levin has also represented receiver Marwil. E&I is correct that this court recognized the potential conflict of interest when it decided that the receiver lacked standing to assert claims against E&I on behalf of all the note holders. As the court recognized at the same time, however, the conflict is only a hypothetical possibility at this point. It is possible that the receiver's duty to act in the best interest of all creditors of CEG might come into conflict with the interest of the subset of note holder creditors, but the possibility appears remote at this point. The court does not see the likelihood of the conflict developing being so significant as to force Rubin & Levin to choose between the clients, let alone to disqualify CCC, as the only applicant for lead plaintiff, from playing that role.

Finally, under Seventh Circuit standards, and through the submission of affidavits, CCC has adequately established that it has a substantial interest in the outcome and will fairly, adequately and vigorously represent the interests of the

class. See *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). Whether a party would adequately represent the interests of a class is a question of fact for the court to decide depending on the circumstances of each case. *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 704 (7th Cir. 1986). Despite E&I's suggestion, no requirement of an explicit affirmation of intent to personally direct or control the litigation is required in this circuit. Cf. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (class representative must be willing and able "to take an active role in and control the litigation and to protect the interests of absentees"). On this record, CCC's motion for appointment as lead plaintiff should be granted.

II.     *Certification of Class Action*

To secure certification of a plaintiff class under Rule 23 of the Federal Rules of Civil Procedure, CCC must also show the court that all four requirements of Rule 23(a) and at least one of the sub-parts of Rule 23(b) have been satisfied. See *In re Neopharm, Inc. Securities Litigation*, 225 F.R.D. 563, 565 (N.D. Ill. 2004). The familiar requirements of Rule 23(a) include numerosity, commonality, typicality and adequacy of representation. CCC has shown that the prospective class includes more than 2,500 members who are owed more than $50 million. The claims of note holders abound in common issues of fact and law, and there appears to be nothing atypical about CCC's claims. For reasons explained above, CCC and its attorneys can fairly and adequately represent the plaintiff class.

CCC contends that it satisfies the requirements of Rule 23(b)(3), which is available if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

E&I asserts that the predominance requirement cannot be satisfied here because (1) each member of the plaintiff class would need to prove individual reliance on the allegedly false financial statements and (2) a statute of limitations defense would have to be applied individually to each class member.

*Reliance*: In securities fraud cases under Section 10(b) of the Securities Exchange Act and Rule 10(b)-5, plaintiffs must establish the following elements: (1) the defendant made a false statement or omission (2) of a material fact (3) with knowledge (4) in connection with the sale or purchase of securities (5) upon which plaintiff investors justifiably relied, (6) and which caused the investors damage. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). The first four elements are clearly susceptible to class-wide proof in this case. The need for individualized damages calculations in the sixth element should not

undermine the plaintiffs' assertions that class-wide issues predominate. See generally Newberg on Class Actions § 4: 25, at 159 (4th ed. 2002) (failure to certify an action under Rule 23(b)(3) on the sole basis that individualized damage determinations make the class unmanageable is disfavored and should be the exception rather than the rule).

Proof of reliance is the key issue. Since the CEG notes were not publicly traded in a sophisticated market, CCC cannot use the fraud-on-the-market theory that can support a presumption of reliance on the part of each investor. See *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988) (where publicly available information is reflected in market price, investor's reliance on fraudulent public statements may be presumed without showing individual reliance on specific statement).

CCC's solution to this problem is a theory adopted by the Seventh Circuit in *Eckstein v. Balcor Film Investors*, 8 F.3d 1121 (7th Cir. 1993). The case involved allegations of securities fraud in connection with the sale of partnership interests in a film venture. The securities did not have the sort of public market that supports the fraud-on-the-market theory of reliance adopted in *Basic, Inc. v. Levinson*. One issue on appeal in *Eckstein* was whether investors who did not read the allegedly fraudulent prospectus could prove reliance and injury from the alleged fraud. The plaintiffs argued that the alleged fraud had allowed the issuer to sell enough of the securities to exceed a required minimum of $35 million. On

this theory, but for the alleged fraud no securities would have been sold at all, regardless of whether any individual investor did or did not read the prospectus.

The Seventh Circuit held that the theory was sufficient to avoid summary judgment in *Eckstein*. The court read the Supreme Court's decision in *Basic, Inc. v. Levinson* as allowing alternative methods of proving the causal link between fraud and an individual plaintiff's loss. 8 F.3d at 1129 (explaining that reliance is not an indispensable element of a claim but is a means by which plaintiff may establish that fraud caused injury). Although the Seventh Circuit warned that such proof might be difficult, the court held that proof that the securities would not have been issued at all but for fraudulent misstatements and omissions would be sufficient to avoid summary judgment on the issue of reliance/causation. *Id.* at 1131.

Plaintiffs in this case contend they can meet this standard. They assert that CEG would never have offered and sold the notes in the first place if it had not been able to tell investors that it had net positive assets and equity. There is evidence to support this contention, from the trial of the SEC enforcement action. Being able to report positive equity was essential to any offering of notes by CEG. According to plaintiffs, CEG, with help from E&I, used the fraudulent bargain sale transactions to inflate CEG's balance sheet so far as to turn negative equity into positive equity, thus enabling CEG to issue the notes. Under this theory, if E&I had done its job honestly, the notes would never have been issued and plaintiffs

would not have suffered injury.  This theory is consistent with *Eckstein* and uses class-wide proof of causation, thus removing the problem of proving reliance and causation one investor at a time, which would make class certification difficult.  Cf. *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (individual proof of reliance would not necessarily mean that predominance of class issues is lacking); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) (same).  Accordingly, the reliance element does not undermine plaintiff CCC's motion for class certification.

*Statute of Limitations*:  E&I also contends that its statute of limitations defense will require individualized determinations that should defeat predominance of classwide issues.  The court is not persuaded.

First, the applicable statute of limitations is contained in 28 U.S.C. § 1658(b) and is the earlier of two years from the discovery of facts constituting the violation or five years from the violation.  CCC maintains that it can prove that the class members could not have known of the facts constituting the violation of securities laws until the SEC brought its action against CEG in July 2002.  This case was filed less than a year later.  It appears to this court that class-wide proof is available with respect to when an investor would have been put on notice of a claim.  CCC and the class will either succeed in making such proof or not, but there is no reason to expect individualized proof of such notice.

Accordingly, E&I's challenge to the predominance element required by Fed. R. Civ. P. 23(b)(3) fails. In addition, the court finds that a class action is the most efficient and superior method of adjudicating these claims, an element required by Rule 23(b)(3) but not specifically challenged by E&I. The factors identified in Rule 23(b)(3) weigh in favor of certification. Individual investors' claims generally are not so large as to support the costs of litigation of separate cases. The financial stakes here do not present the interests in individualized control of litigation that are more likely to be present, for example, in cases of serious personal injuries or cases with significant privacy interests. Class certification will also serve the interests of concentrating litigation stemming from CEG's insolvency in one court. Finally, the court expects the case to be no more difficult to manage as a class action than a typical securities fraud class action.

III.     *Class Period*

In its opposition to the class certification motion, E&I takes issue with the class period proposed by CCC. CCC would define the class as those persons who purchased the CEG investment notes between April 30, 1998 and April 30, 2002. The March 2002 offering circulars offered to prospective buyers contained unaudited financial statements. E&I contends the class period should be reduced by at least a month to eliminate those purchasers who bought the notes accompanied by an prospectus with financial statements that E&I did not audit.

The court is not persuaded, though the issue may need to be revisited at some point in the future. First, plaintiffs' theory of causation could extend to purchasers of notes in April 2002, at least on the theory that those notes would not have been issued but for the alleged fraud in earlier offering circulars with the financial statements audited by E&I. Also, the allegations against E&I are broader than simple auditing improprieties, and E&I's role in the issuance of the March 2002 offering circular with the unaudited financial statements is unclear at this point. In any event, this is an issue that cannot be resolved definitively until more facts are available. The court always retains the ability to modify the class definition at a later stage if the need arises. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981).

*Conclusion*

For the reasons set forth in this entry, CCC's Motion for Appointment as Lead Plaintiff is GRANTED. The court also approves CCC's retention of Sommer Barnard Attorneys, P.C. and Rubin & Levin, P.C. as lead counsel. In addition, CCC's Motion for Class Certification is GRANTED and a class consisting of those persons who purchased investment notes offered by Church Extension of the Church of God, Inc. between April 30, 1998 and April 30, 2002 is hereby certified pursuant to Fed. R. Civ. P. 23(b)(3). Plaintiffs' counsel shall submit to defense counsel no later than June 1, 2005 a proposed form of class notice and related opt-out forms. Defense counsel shall provide comments to plaintiffs' counsel within seven calendar days of receipt, and plaintiffs' counsel shall then submit a proposed form of notice to the court **no later than June 15, 2005**. Defendant shall file **no later than June 22, 2005** any objections it has to the proposed form of notice.

So ordered.

Date: May 9, 2005

*[signature: David F. Hamilton]*

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Mary T. Doherty
Sommer Barnard PC
mdoherty@sommerbarnard.com

Heather L. Emenhiser
Stuart & Branigin LLP
hle@stuartlaw.com

Nicholas Christo Nizamoff
Stuart & Branigin LLP
ncn@stuartlaw.com

Susan K. Roberts
Stuart & Branigin LLP
skr@stuartlaw.com

John C. Hoard
Rubin & Levin, PC
johnh@rubin-levin.net

Elliott D. Levin
Rubin & Levin, PC
edl@rubin-levin.net

Shelley Malinowski
Jenner & Block LLC
smalinowski@jenner.com

Jeff Jacob Marwil
Jenner & Block LLC
jmarwil@jenner.com

Sue Figert Meyer
Rubin & Levin
sue@rubin-levin.net

Peter Jonathon Young
Jenner & Block, LLC
pyoung@jenner.com